## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO.: 07-226 (CKK)** |
| | : | **Status Hearing: July 7, 2008** |
| **GARY STRICKLAND,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR PLACEMENT INTO HIGH INTENSITY SUPERVISION PROGRAM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion for Placement into High Intensity Supervision Program.

### Procedural Background

Defendant, Gary T. Strickland, is charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Unlawful Distribution of 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(b)(1)(B)(iii). A sealed indictment was filed in this case on September 6, 2007. On April 4, 2008, the defendant was arrested and presented on a bench warrant. The United States's oral motion for temporary detention was granted. A detention hearing was held on April 9, 2008, before Magistrate Judge Alan Kay. Over the objection of the government, the defendant was released into the custody of a halfway house, with no social passes. On June 2, 2008, the defendant's case manager at Extended Halfway House wrote a memo to the Court noting that the defendant's adjustment to the halfway house had been positive. He stated that

if the defendant were not released from custody, the defendant's social pass restriction should be lifted.   At a hearing on June 2, 2008, the defendant requested that he be released into the High Intensity Supervision Program at pretrial Services Agency.  The Court denied the motion, but lifted the social pass restriction on the defendant, without objection from the government.

According to Pretrial Services Agency, on June 4, 2008, due to no fault of the defendant, all residents at Extended House were remanded to D.C. Jail.  As a result, on June 6, 2008, Pretrial Services Agency recommended to this Court that the defendant be placed into the High Intensity Supervision Program ("HISP").  (Pretrial Services Agency lists no basis for this recommendation of a reduction in supervision other than the unexpected closure of Extended Halfway House.)  On June 16, 2008, the defendant filed a motion for the defendant to be placed into HISP.  At that time, the defendant was still in D.C. Jail, and defense counsel represented that it would be "difficult, if not impossible" for Pretrial Services Agency to find placement at another halfway house.  At a hearing before this Court on June 19, 2008, the undersigned learned that the defendant had in fact been successfully placed at Hope Village Halfway House.

Defense counsel nevertheless pressed his motion in court, arguing that the defendant should be placed into HISP.  Defense counsel noted that the defendant was working and that the defendant's family was at home for him.  The defendant's motion is without merit.  It has been the government's position from the inception of this case that the defendant poses danger to the community. The defendant's confinement to a halfway house is the very least condition which should be set in order to assure his appearance and the safety of the community.

## Factual Background

On October 10, 2006, a confidential informant ("CI") working for the Bureau of Alcohol,

Tobacco, Firearms and Explosives ("ATF") contacted the defendant, and arranged to purchase a handgun and some crack cocaine the next day. The CI arranged to meet with the defendant in the parking lot of his residence located at Potomac Gardens, in the 1200 block of Eye Street, S.E., Washington, D.C. On October 11, 2006, Special Agent ("SA") Jeffrey Meixner and Montgomery County Police Officer Charles Haak met with the CI at a predetermined location. SA Meixner and Officer Haak searched the CI and the ATF undercover vehicle for contraband, with negative results. The CI was given $1000.00 in pre-recorded ATF funds. At approximately 5:00 p.m., the CI was observed by the surveillance team as it drove to the parking lot of Potomac Gardens.

At approximately 5:25 p.m., the defendant met the CI in the parking lot and entered the front passenger seat of the undercover vehicle. Inside the vehicle, the defendant indicated that he had the firearm in his apartment. The CI and the defendant walked to the defendant's apartment, located at 704 12th Street, S.E., #12, Washington, D.C. Once inside, the defendant provided the CI with a bowling ball bag containing, among other things, a Harrington & Richardson model 732 .32 caliber revolver, loaded with six rounds of .32 caliber ammunition, a quantity of a white powdered substance (which was later determined to be Quinine), and fifty-three clear plastic glassine bags that are used to package narcotics. The defendant and the CI walked back to the ATF undercover vehicle in the parking lot. The defendant had a conversation with the CI about arranging for future transactions.

After the transaction was complete, the CI departed the area in the undercover vehicle and returned to a predetermined location while under the surveillance of ATF law enforcement agents. At this location the CI gave SA Meixner the items that it had obtained from the defendant. The CI and the undercover vehicle were again searched by SA Meixner and Officer Haak, and found to be

free of any contraband. Later research showed that the revolver was manufactured in Massachusetts and thus would have traveled through interstate and foreign commerce in order to be recovered in Washington, D.C. At the time the defendant possessed the revolver, he had previously been convicted of a crime which is punishable by more than one year's imprisonment.

On January 9, 2007, the CI contacted the defendant and arranged to meet him to purchase a handgun and crack cocaine the next day. On January 10, 2007, SA Meixner and SA Joshua Green met with the CI at a predetermined location. The CI spoke to the defendant by way of a recorded telephone call and arranged to meet him in the area of Potomac Gardens. SA Meixner searched the CI and the ATF undercover vehicle for contraband, with negative results. The CI was given $1,200.00 in pre-recorded ATF funds. At approximately 2:00 p.m., the CI was observed by the surveillance team while it drove to the parking lot of the McDonald's Restaurant located at 1539 Pennsylvania Avenue, S.E., Washington, D.C.

At approximately 2:30 p.m., the defendant met the CI in the parking lot. He was driving a 1997 Grey Land Rover vehicle, with Maryland Registration 390M675. The CI entered the passenger side of the vehicle. The defendant obtained a container of Desitin from the rear passenger seat. There was crack cocaine in the container. The defendant then gave the CI a plastic bag containing 11.5 grams of crack cocaine which he had removed from the Desitin container, in exchange for $660.00 of pre-recorded ATF funds. The defendant stated that the crack that he gave the CI was what he "broke off." The defendant stated that he did not have the handgun. After additional conversation about possible future transactions, the CI got out of the Land Rover and returned to the undercover vehicle, and then left the parking lot.

The CI departed the area in the undercover vehicle and returned to a predetermined location

4

while under the surveillance of ATF law enforcement agents.  At this location, the CI handed SA Meixner the clear plastic bag containing the crack cocaine.  The CI and the undercover vehicle were again searched by SA Meixner, and found to be free of any contraband.

Portions of both transactions between the CI and the defendant were captured on audio tape and video tape.

<u>Argument</u>

Defendants who are charged with an offense for which a term of imprisonment of ten years is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, are eligible for pretrial detention.  18 U.S.C. § 3142(f)(C).  Where there is probable cause to believe that a defendant committed such an offense, it is presumed that there is no condition or combination of conditions that will reasonably assure appearance of defendant and the safety of the community.  18 U.S.C. § 3142(e).  The Court is to consider four factors "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required[.]" 18 U.S.C. § 3142(g). These four factors are discussed below.

1.  <u>The nature and circumstance of the offense charged</u>.  The defendant is charged with  two separate transactions.  In the first transaction, he agreed to sell the CI a handgun and two "eight balls" of crack cocaine.  To complete this transaction, the defendant went into his own apartment, where he obtained a loaded revolver, 53 unused ziplocks for packaging narcotics, and a quantity of a substance which appeared to be cocaine but was later determined to be quinine.  At that point, the defendant agreed to engage in future transactions with the CI. In fact, three months later, the defendant told the CI that he was willing to sell him another gun and several "eight balls" of crack.  Although the defendant failed to bring the gun with him, the defendant did sell the CI 11.5

grams of crack cocaine, and again offered to engage in future transactions. In fact, the defendant specifically asked the CI if he could "move any water," saying he had a source for PCP.

>    2. <u>The weight of the evidence against the person</u>.

The case against defendant is strong. Portions of these transactions were recorded on audiotape and videotape.

>    3. <u>The history and characteristics of the person.</u>

The defendant has a lifelong criminal record. On July 26, 2001, he was convicted of Dealing in Firearms in Case No. CR00-000397. On August 13, 1993, he was convicted of Possession with Intent to Distribute a Controlled Substance in Prince George's County, Maryland. On September 13, 1988, he was convicted of two attempt crimes and Possession of Drug Paraphernalia in Superior Court Case Nos. 1988FEL003998 and 1987FEL005871. All of the defendant's past convictions involve exactly the same kind of behavior as the crimes with which he is now charged.

>    4. <u>The nature and seriousness of the danger to any person or the community that would be posed by the person's release</u>

The crimes charged in this matter involve two separate sales which could have resulted in narcotics and a gun being released into the community. In the first one, the defendant operated from the inside of his home, where he presumably was living with the same wife and children whom he now wishes to rejoin under some guise that living with his family would prevent him from engaging in dangerous criminal conduct. During these crimes, the defendant stated his intention to repeat these kinds of transactions by asking the CI to engage in future transactions. He even discussed selling the CI PCP, a drug whose dangerous effects are no doubt well known to the Court. It is evident that the defendant's prior convictions for dealing in firearms and possession with intent to

distribute have not deterred him from continuing to sell drugs or guns. Given that the defendant has

no apparent issues with dealing drugs or guns right from his own home, and that these are crimes that

would be hard to monitor and prevent, the defendant should not be released into HISP. In fact, even

the lifting of the restriction on social passes increases the opportunity for the defendant to continue

his illegal drug and gun sales from his home.

<u>Conclusion</u>

For the foregoing reasons, the government requests that the Court deny Defendant's motion

for placement into HISP.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney


By:        /s/_____
        Emily A. Miller
DC Bar 462077
Assistant U.S. Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7533